GREAT AMERICAN INDEMNITY COMPANY, Appellant,

v.

Opal Mae Elledge CHRICEOL et al., Appellees.

No. 3545.

Court of Civil Appeals of Texas.

Eastland.

June 24, 1960.

Rehearing Denied July 15, 1960.

Kemper & Kemper, Houston, for appellant.

Kirchheimer & Kirchheimer, Houston, for appellees.

WALTER, Justice.

Opal Mae Elledge Chriceol (formerly the widow of Hugh Edward Elledge) and the children of Hugh Edward Elledge recovered judgment for death benefits under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., against Great American Indemnity Company. The insurance company has appealed from such judgment, contending (1) there was no evidence to support the jury's finding that the deceased was in the course of his employment at the time of his death and (2) that such finding is against the great weight and preponderance of the evidence. It also contends the Court erred in refusing to grant a mistrial and in admitting some impeaching testimony.

The opinion of the Court of Civil Appeals in a former appeal of this case is found in 312 S.W.2d 722 and a Per Curiam opinion by the Supreme Court in refusing a writ of error, no reversible error, at 320 S.W.2d 328.

The evidence considered in the light most favorable to the verdict, is sufficient to establish the following: that the deceased had been working for Ervine and Bishop since 1942, performing maintenance work and anything he was asked to do and was a good employee; that he usually reported for work about 7:30 in the morning; that the deceased's body was found on the premises of Ervine and Bishop at about 8:00 a. m. on September 4, 1956; that the appellant insurance company stipulated the deceased died from accidental injuries while on the premises of his employer. The appellee, Opal Mae Elledge Chriceol, testified: "—and I asked him to come in and spend the night there, and he said 'no I cannot' and I said 'well let's go over to Roy Circle and stay tonight and I will come back in the morning' and he said 'no I am not, *they got me hired to watch out there on account of the automatic sprinkler is out*' and he kissed me good night and that was it." Barbara Jean Noack testified as follows: "The best I remember they were standing there talking and she asked him if he would

go over to their house and spend the night and he said that he couldn't, and he said, and she said 'well will you stay in here tonight' and he said he couldn't *he had to go back to the warehouse and watch the water tower, that it was leaking,* and she said he could come the next day for dinner, and he said 'okay'." The above testimony was admissible. See Judge Werlein's opinion on the former appeal of this case, 312 S.W.2d 722.

■ From the opinions of the former appeal and a study of this record, we reach the conclusion that the evidence introduced in both cases was substantially the same on the issue of whether the deceased was in the course of his employment at the time of his death, with the exception that in the case at bar some evidence was admitted for impeachment purposes only. The trial court in a former trial granted an instructed verdict for the insurance company. The Court of Civil Appeals reversed the trial court and the Supreme Court in a Per Curiam opinion refusing a writ, "n. r. e.", said: "This testimony, the stipulation of counsel, and the other circumstances established by the evidence raises an issue of fact as to whether the deceased sustained his accidental injury in the course of his employment." We hold there was some evidence of probative value to support the jury's verdict that the deceased was in the course of his employment at the time of his death. Great American Indemnity Co. v. Elledge, Tex., 320 S.W.2d 328, 329.

■ Appellant contends the court erred in refusing to grant a mistrial because one of the employers of the deceased was called on the telephone during the trial by some unknown person and asked if he was interested in making a deal whereby he could be sure of winning his lawsuit. The deceased's employer testified that the person calling "kind of laughed and it sounded like a young voice". The record reveals the jury was composed of six men and six women and that in the opinion of counsel for appellees no man on the jury was less than thirty years of age. The appellant re-

lies upon the case of Dallas Ry. & Terminal Co. v. Burns, Tex.Civ.App., 60 S.W.2d 801, 803, and Texas Employers' Insurance Ass'n v. McCaslin, Tex., 317 S.W.2d 916, 918, in support of its point that the court erred in refusing to grant a mistrial. The facts of those cases are not analogous to the facts of this case. In the Burns case one of the jurors was approached by some unknown person and asked if he would like to kill two birds with one stone. He was asked by this unknown person " * * * if he remembered a lawyer who had killed his brother, and that this person was one of the attorneys for the plaintiff in this case, and that if he would hang the jury he could get even with this lawyer and also make $300 for tying up the jury". In the McCaslin case the plaintiff talked to one of the jurors and told her in the course of said conversation: "be sure and do all you can to help me". The trial court and the Court of Civil Appeals, 312 S.W.2d 593, in the McCaslin case held said error to be harmless and the Supreme Court reversed the trial court and the Court of Civil Appeals and held that said action constituted reversible error. In the case at bar the person called by the unknown party was neither a juror nor a party to the suit. There is no showing who the party was who made the call or that he was in any manner connected with the case. We hold that the court did not commit reversible error in refusing to grant a mistrial.

We have studied and considered all of the evidence in this record and we find that the jury's verdict that the deceased was in the course of his employment at the time of his death is not against the great weight and preponderance of the evidence.

■ Appellants' point that the court erred in admitting the testimony of David Lee Elledge that Paul A. Pheiffer had made a prior inconsistent statement that the deceased had been hired to watch the premises is without merit because said testimony was properly admitted for impeachment purposes only. After Mr. Pheiffer, who was a superintendent for Ervine and Bishop,

**407**

had been called as a witness for the appellant and at the beginning of appellees' cross-examination, counsel for appellants said: "I ask the Court to instruct the jury that any statement that Mr. Pheiffer may have made that Mr. Kirchheimer might be going into at this time, will be limited to any impeachment only." Pheiffer testified on cross-examination that he had not told the police officers that on account of the fire hazard the company needed someone at the plant at all hours and that the deceased had agreed to stay at the plant temporarily. The record reveals that a proper predicate was made for such impeaching testimony. The testimony was not received as original evidence by the trial court but it was received for impeachment purposes only. We hold the appellant has not shown the court committed reversible error by permitting this testimony to go before the jury for impeachment purposes only. See McCormick & Ray, Texas Law of Evidence, pages 422 and 423.

We have examined all of appellants' points and find no merit in them and they are accordingly overruled.

The judgment is affirmed.